We move next to UGI Sunbury v. Permanent and Temporary Easement Mr. Martin. Good morning. Good morning, Your Honors. May it please the Court, James Martin for the appellant. And with the Court's permission, I'd like to reserve three minutes for rebuttal. Granted. As the Court knows, at the heart of this case is Mr. Scherer's opinion and his damaged goods theory that provided the foundation for the district courts. Reduction of after condemnation value of both properties, 15% for the Beechill property on the one hand, 30% for the Pontius property on the other. That was the sole support for the reduction in value as the district court's opinions made clear. And we submit and the record shows that there's no foundation for that reduction, principally because Mr. Scherer's testimony flunks under Daubert's reliability and fit components. When the record shows, as it does here, that the testimony of an expert is not founded on data that comes out of the case, but rather devolves into a personal subjective opinion. This Court has said, starting with United States v. Downing, Judge Becker's opinion that became the foundation for Daubert up through Paoli to TMI and beyond, that where the record reveals a personal subjective opinion from an expert, no matter how qualified, in an area where competent expert testimony based on the facts in the case is required, that testimony has to be excluded. Counsel, you don't dispute that stigma damages may be appropriate. Your qualm is with the way they've been proven here or sought to be proven here. That's correct, Your Honor. Stigma obviously is something that is part of appraised value in condemnation cases. It exists in a variety of contexts and we don't dispute that it could be hypothetically possible that it could form part of a buyer's perception in an underground pipeline case. The problem here is that there isn't any foundation for that happening for this purchase with these easements in this record. In all the cases that the other side has relied on or that the trial court pointed to in the footnote in its opinion, you will see in studying those cases that there is that factual foundation. In those cases, there are surveys or there's testimony from realtors or there's focus groups or there are comparable sales. Some sort of foundation, as the appraisal standards would require, that provides the link to the stigma of finding in those cases. And that's what's absent. So it's your position that any of those means may be appropriate. That's something the discretion of the district court. You're not espousing, in other words, the position that has been raised by some of the amici in support of your client that comparables would not be sufficient, that it needs to be a paired analysis. Right. So, Your Honor, for purposes of our argument, we do not go that far and we are not asking the court to go that far. Certainly, the amici have made the point as to why those paired sales should be the foundation for a stigma finding. What we draw from that is the essence that there has to be that foundation in the record and it has to be not speculation. But we know from Mr. Shearer's admissions that he was speculating. He said it over and over again. We know that Mr. Shearer can't point to any market data in this case as the foundation for his opinion. He said it. We know his comparative methodology to TMI, to Exxon Valdez, and to the Lusts situation isn't connected to this case. He said it. So we end up in the place that this court has many times with a personal opinion that there should be stigma here. Some degree of opinion is required where there aren't comparables to work with. And that was the case for your own expert as well, right? Well, in our case, our expert, Mr. Delulli, didn't draw any stigma conclusions because he couldn't find any foundation for it. And certainly whether appraised value might be an exact, it might be a matter of educated guess in certain instances, something has to provide the foundation for the guess or the educated guess or the opinion or the intuit or the common sense. You can't just say because the expert says it's so, that's enough. But that's what's going on in this case. And that's the principal distinction from this case and the other cases. Here, when we unpack Mr. Shearer's testimony, we don't find any link to either a fear of factor as it relates to these easements or a reduction of value factor as it relates to these easements on this record. So it's not a matter hypothetically of whether stigma is possible. It might even be a matter of intuit that in an underground pipeline case, you could have stigma. We aren't disputing either of those points. The focus here is on this case. Was that link made with hard data that related to these easements? Well, if you embrace the notion that common sense and intuition would be sufficient to credit some diminution in value of the property, then why wasn't the district court entitled to rely on its own common sense? It did not embrace the figures of Mr. Shearer. It used its own. So the common sense or intuit has to have a foundation. It may indeed be intuitive that there could be, as I said, stigma or a reduction in value in an underground pipeline case. But you have to get beyond that. All the cases agree, and the appraisal standards agree, and even the expert witnesses here agree, that you've got to have a factual foundation to carry through on any notion of intuit. Hypothetically, intuitively, perhaps, but without the factual link, you don't get there. So what did Mr. Shearer do? Following up, I think what Judge Cross is asking is, I thought the whole point you were making is that this is supposed to be specialized scientific or technical knowledge under 702. But now I hear you saying, well, it's really not. It's common sense. It's intuition. It may be kind of a feel. Then we're out of 702, and then what the district court did was proper, right? So let me make myself perfectly clear here. If we are talking only about intuit or common sense in the abstract, as you and I might feel it, as non-experts, that is not enough. That's the problem. We do have to take the next step, and in order to get from there to stigma and a reduction in value in a particular case, we need competent expert testimony, number one. So we had a qualified appraiser here, and we need a factual basis that shows a fear of factor or a perception by the buying public and a reduction in value tied to that on the other. It's that second step we're missing, and this brings us back to the 702 cases. In Kumotair, in Joiner, in TMI, in Paoli, in Carlo, in case after case, there were eminently qualified experts testifying as Mr. Shearer was in an area where expert testimony was required, looking at what they had in the record to try to do it. They didn't have it, so they went outside the record to try it some other way. When we focused on the other way here, we find out that these case studies don't substantiate this opinion, and we're back to speculation, subjective speculation, and personal opinion, and that closes the case. That has to be excluded. Once it has to be excluded, the judge's more conservative guess is still a guess, and the guess without foundation, as this court's opinion in Giles says, is vulnerable to clear error review. Where a finding is devoid of factual foundation, as these reduction in values most certainly are, it gets no credit. The expert's testimony has no probative value on the one hand, and the lack of probative value can't be converted into fact by a judge relying on it on the other. So we are left with the need to remand this case, remand this case with directions to the district court that stigma evidence is not admissible in the determination of value, and we will leave ourselves with the appraisal testimony that's in the record, apart from that, in order to do it. Counsel, do we need to address both the Daubert issue and the Rule 52 issue? I think they are linked, but the answer is if you find that there was prejudicial error in the admission of the expert's testimony, which there was, you can reverse. If you find that under Rule 52, the district judge's findings and reduction in value were devoid of support in the record, you can reverse for that reason as well. In most of the cases, one follows from the other, and so we would encourage the court to say both things, but then as I said, importantly on remand, not to allow this stigma evidence to again pollute the underlying appraisal record and have the after value determined from the rest of the foundational testimony. In terms of that disposition, your own amici, at least those supporting your client, have indicated that they view the state of the law as to how to ascertain stigma damages to be in disarray and have asked this court to provide some guidance there. Given that backdrop, why shouldn't there be on remand the opportunity to either use another expert or present other expert testimony that meets up with a standard that if we were to take this approach, that we would articulate? Let me answer that this way, Your Honor. There isn't any debate in the case law or any disarray in the case law, federal or state, that speculative expert testimony that's based on subjective opinions that aren't grounded in the record should be excluded. We don't need to have that fleshed out on remand, and the Wisegum case that we cited indicates that if we find this testimony is incompetent, which it is, that's the end of the inquiry. We don't need new trial to flesh that out. The second thing would be that they had the opportunity to gather whatever support they wanted from the inception of this case for the expert's testimony through the reports and otherwise. This was a tactical election that they made to stand on the record that they have, and as the EEOC case that we've cited from this course indicates, there's no reason to let them go to school, find out that they need to redo, and then give them a redo. Daubert standards are not a mystery. They were known, and the appraisal standards are not a mystery. They were known. They should be bound by that tactical judgment. Don't we need a redo in any event given Tennessee Gas? No, I don't think we do, Your Honor, for the issues that we're talking about here. It could be that on the valuation with the rest of the record, praise testimony on remand, Tennessee Gas could have a role to play in setting the definition of fair market value. But for purposes of the elimination of stigma, those are federal issues, as we've said. It's conceded that Tennessee Gas doesn't play a role there. And for the purpose of state or federal law, Harley-Davidson tells us that state law and federal law are in equipoise here, that is that speculative expert testimony will not be admitted on stigma issues in condemnation cases. And the Buffalo Township Smith case that we've cited flushes that out as applied to an underground pipeline case. So that should be over. Is it your position that remand would need to be, since there was no appeal of the professional fees, for example, that the remand would be limited to just the assessment of reduction in value? Yes. Stigma, with your expert's report being the only evidence in the record on that? Well, there's other evidence in the record from Mr. Shearer. This is only a piece of his testimony about value that is the reduction in value based on stigma. There is testimony from the owners, some of it non-speculative, although with respect to stigma, it clearly was. And there's Mr. Galluli's testimony. So we have appraisal evidence before and after in the record. That was made by the parties at trial. So our position would be have the judge re-examine that and see where it comes out. Divorce from any stigma issue. You've asked us to look under Daubert both at reliability and the fit. When it comes to assessing the nature of the fit, can you address one of the arguments, again, that was raised by Amiki, is that we should look at a nexus? Is the nexus, as you understand it, is that anything different than the normal analysis we do under Daubert of the fit of the expert testimony to the facts of the case? Not as I understand it, Your Honor. I think that fit issue is very much a relevance inquiry. And here it is. Do the case studies that the expert applied to create his damaged good theory and untested theory, I might add, do they connect to this case? Are they relevant? Do they fit? For Exxon Valdez, he said no when asked. For Lusts, he said no when asked. For TMI, he said when asked, I can't connect it to this case. So that is very standard, no fit under Daubert as this court has construed it from a relevance standpoint. What about the standard of, you say it should be vacated for lack of, quote, competent evidence. Is that competent evidence standard anything different than looking at Rule 52 and 702? No. The point is that there has to be probative evidence or something with evidentiary value to support the finding that's under attack. Where the record is devoid of that support, this court in its review role can reverse and should reverse. It's a limited function, but it's a clear one from this court's case law. Thank you. Thank you, counsel. Mr. Faraday? Yes, good morning. May it please the court. Michael Faraday on behalf of the Georgia A. Pontius Trust concerning the 0.43 acre property. My case is 1831-27. I will take 10 minutes and focus on the competent evidence argument supporting the judge's decision. Counsel for the companion case, Beechel, 1831-26, will then take 10 minutes and focus on Federal Rule of Evidence 702 and Daubert. The argument that you just heard began with the statement that the heart of the matter was the damaged goods theory. That's not what the judge relied upon. That's not strongly in evidence, but it's not what the judge relied upon. As we look at JA-36, we see in the judge's decision that he found damages in property to decrease in value because of the reduced area available to build on the property and because of the stigma associated with having a natural gas pipeline installed on the property. So the judge relied upon this reduced buildable area and stigma. So we can put aside the damaged goods. And, you know, that is a theory, but it's not what the judge relied upon. The judge was free to rely upon stigma evidence and should have relied upon stigma evidence in this case. He did state expressly that he was relying in part on the stigma evidence. So can you address the foundation for that? What competent evidence, meaning both under Daubert and 52, do we have for the percentage reductions in this case? Certainly, Your Honor. And let me begin, though, as we get to that point. We look at the Tennessee gas case. What the judge did here was that he looked at the situation. We were pending this decision of the upper court to apply federal or state law. So he instructed us, try your case. He wasn't sure during the trial what he was going to decide. So he allowed the parties to proceed with evidence to satisfy both the federal requirements and the state law requirements. So that eliminates, I believe, the need for a remand. That's how the judge handled it. Then when the judge decided the case, he applied federal law, which I think is more stringent in the application of evidence or the admission of evidence. He found reasonably so, and I'll review that, that there was adequate competent evidence to support the stigma. And he relied in part upon that. So that's all valid. We'll discuss that more fully, I'm sure. But what happened now is we look and sit here today. We have the Tennessee gas that tells us to apply state substantive law. So that directs us to the Pennsylvania Eminent Domain Code. And that has a provision specifically on point as to what evidence is to be admitted. And that is the Pennsylvania Eminent Domain Code 26 P.A. C.S.A. Section 702 A. Actually, let me just write that. That's a provision that defines the before and after test in state law that matches federal law. So that's what 702 does. But then as we look at what is to be the evidence to be considered under the applicable state law, as we now understand it, is 26 P.A. C.S.A. 11051, which states the qualified valuation expert may undirect or cross-examination state any or all facts and data which the expert considered, whether or not the expert has personal knowledge. So the clear definition of what is evidence to come in to support this fundamental Fifth Amendment right on just compensation is any and all facts and data. So as we look at what can be testified to, it's broad as can be, to give deference to the challenge of appraising property. But how does that help your case here where Mr. Shearer candidly acknowledged that his assessment was completely subjective, it did not rely on facts or data, that in fact it can't be proven, and that there's no data either way as to whether it diminishes the property or has no effect on property. I disagree, respectfully disagree with that, Your Honor. And if we look at the evidence here, I think there is facts and data and there is a valid basis for it. It begins with the report. If we look at the J.A. 688, we have the appraiser's report describing stigma as a valid concept for the dictionary of real estate appraisal and what he described as the Bible, the appraisal of real estate appraisal, as being supporting the premise of stigma being a valid and needed concept to evaluate property within real estate. He then goes on to the next page and is really at page 689 where he discusses the TMI study, the impact study that he did, perhaps one of being in the best position to qualify stigma or analyze stigma, in that he did large-scale studies on both the TMI study and also his study of the Exxon Valdez. So he did the studies. He didn't attach those reports. He didn't describe in detail that data. But he explained how the data from that, the facts and data of those studies, gave the support for there being stigma and there being stigma in this case. The analogy of stigma there makes sense here. Here we have explosive natural gas under high pressure. Of course, we know the harms from TMI and Exxon Valdez. Similarly, the comparison is environmental harms that cause stigma or harm to the property. He testified, and perhaps the witness was a little quirky or a little odd or maybe too giving admissions, but if we look at his testimony, the record is full of his testimony of supporting stigma and explaining it and explaining how it applies to this case in the risk of explosion. He did that with extensive testimony in the Morse Barger matter at length. We have his testimony explaining how the stigma would chill the value of the property or reduce. He explained there'd be less members of the pool of potential buyers. And those that were left would discount the property. So the record has extensive points of his supporting it. Counsel, that takes us to the question of fit, right? Okay, yes. And the Supreme Court has said that we need to seek good grounds to extrapolate from the expert's opinion and the extent to which there's some comparison like that to the facts of this case. Don't we have your expert candidly acknowledging that there's not a fit, that these are wholly dissimilar? In one part of his testimony, yes. In other parts of his testimony, it's very strongly explaining that there is a fit and there is the analogy in comparison of looking at the influence on market value, looking at the market value. And that's the test of the gold standard of what the appraiser is looking at. So he- Did the court make findings as to what fit and what didn't so that this court can know what was relied upon? The judge did not make those findings. Pointedly, in the courts of the trial, the judge pointedly asked questions of the appraiser at the record at pages 820 to 822 and had the witness acknowledge or explain some of the stigma. And with that, the judge was free to accept the parts of the sheer testimony that supported stigma and the fit to this case. The judge looked at these reports before the matter was in trial and proceeded to review these and rule on the motion. And in doing so, he described that he saw the fit and the relevance. And that's in his motion where he ruled upon the considered review of the appraisals what to do, to let both appraisal reports in. He saw a deficiency, I believe, in the report of the appraisal for UGI in that it didn't even appraise the right thing. The clear standard under federal and state law is before and after test. And that's what Mr. Shearer did, using the full concept of stigma and the best efforts, which is really what's all that's required by Harley-Davidson. And the judge saw that as a fit to this case. He saw in his conclusion, he didn't state it as a fit of the analogy, but by his language in the order of describing that there is a fit, as he considered Daubert and other cases, his conclusion was to let this evidence in. He let our evidence in. He let their evidence in. They didn't appraise before and after. They just, in the after situation, appraised the value of the easements, thereby intentionally ignoring the harm to the remainder of the property, which is part and parcel of the stigma that applied. So the judge was thoughtful in his consideration, and there's evidence they could rely upon. Is a vague reference to fit sufficient for a finding of the subordinate factual findings that O52 requires? Yes. We look at the total evidence of the case, including the plan that's in part of the record here, and the plan shows a small triangular parcel that's bisected by this pipeline. That in itself is strong evidence to show the fit of this explosive material in the middle of the property. The judge saw that as a fit, and the judge has broad discretion to admit evidence. I think he was required to admit the evidence under the Harley-Davidson matter, and I think the standard that we apply is Harley-Davidson, not 702 in the matter here. We're applying state substantive law, and that tells us to admit all the facts and data. The test as reviewed in Harley-Davidson at page 289 includes, while the expert's opinion, and he's talking about stigma here, while the expert's opinion may not be based upon pure conjecture, we conclude that an appraisal expert's best efforts to quantify a reduction in property value as a result of subjective and intangible stigma is permissible. Very low standard. The judge chose to pick and accept part of the stigma testimony. The testimony from the appraisal witness was that I don't think the stigma was a major factor here. On the record, 843. He didn't weigh it much. The judge didn't weigh it much. The judge saw that this pipeline bisected this property, and there was a loss of billable area on the small commercial property. He reduced the damages from 60% to 30%. So perhaps stigma sneaks its nose under the tent here, but that's not what the judge drove the judge's decision. There's extensive testimony of the property having reduced size for commercial purposes, and that's what I think the judge had in mind. It's not of use of discretion here for the judge to pick and choose from the evidence. The judge noted he has broad discretion. He explained what he was doing, and I think he was on target with the federal law, and even more on target as we look at the federal law that requires the admission of this evidence. And while there were maybe contradictory testimonies from Mr. Scheer, there certainly is evidence, competent evidence of record. Thank you, counsel. We'll hear now from your colleagues. Thank you. Good morning, Your Honors. May it please the Court. My name is Stephen Edwards, and as my colleague Mike Faraday indicated, I represent the Beachels in this appeal, and my remarks will be addressed to the Daubert admissibility of Scheer's testimony issue. Briefly at the outset, Your Honors, I want to point out two key principles of deference that should guide this Court's decision on whether it was appropriate for Judge Brand to admit Scheer's testimony. The first thing that must be borne in mind throughout this case is that this Court is reviewing Judge Brand's decision for an abuse of discretion. This is a highly deferential standard of review. In the formulation of a prior case of this Court, the Court may only reverse if the decision is found to be arbitrary, fanciful, or clearly unreasonable. And that language obviously sets a high bar. The second principle of deference I think this Court should bear in mind is that Daubert and the cases decided in its wake actually create a strong preference for admission of expert testimony that may have a questionable basis. The outright exclusion of expert testimony because it has a shaky foundation is not what Daubert envisioned.  This Court's task is not whether to decide whether Scheer's testimony reached the correct conclusion, and it is also not to decide whether it was appropriate to admit Scheer's testimony as evidence in the first place. Rather, the Court is deciding whether Judge Brand abused his discretion in looking at the evidence in the first instance. Even if he did not, and we take account of this being a bench trial, so even if he didn't in the first instance, he decided to let it in as a preliminary matter, have cross-examination. By the point that he was hearing that this could be 10, it could be 20, it could be 30 or 40, that the estimates that he's picking may sound crazy and it is completely subjective. At that point, when the motion was renewed to exclude his testimony, why shouldn't it have been granted at that time? I think that if you take that remark in context, what Scheer is saying there at that point in the trial was he was explaining that in general, when an expert real estate appraiser goes about deciding what the stigma effect will be, it's not a precise mathematical equation. And where did the District Court make that point? The District Court, readably, Your Honor, the District Court's opinion is sparse on that. The District Court could have included more language. Let's assume we accepted what you're saying, that DAPR creates a preference for shaky evidence. Don't you still have to go through that process and create a record as to why it is that you're finding both reliability and fit for this technical and specialized evidence? I think the testimony was elicited by the court and by counsel at trial. As I said, the memory and opinions of Judge Brand themselves are a little bit sparse on the issue. But I think if you take the opinion in conjunction with the trial testimony, you see clear reliability and clear fit. I think that another principle that needs to be borne in mind with this is that the gatekeeping obligation of the district judge under Daubert is not supposed to be a substitute for the adversary process. I mean, what happened here in these trials actually conforms exactly with what Daubert envisioned, which is that expert testimony with an arguable basis, the damaged goods theory, stigma damages, is admitted so that it can be subject to cross-examination and the presentation of contrary evidence. That's exactly what UGI did at trial. And just because the trial court ultimately did not accept their expert's evaluation opinion does not mean that it erred in admitting Mr. Shearer's opinion. That Judge Brand was following this policy in admitting Shearer's testimony is evident in his ruling on the motion in Lemonnet in the Beachell case, I think also in the Pontius case. He cites this court's opinion in Powley for the exact quote that there is a strong preference for admission of expert testimony under Federal Rule of Evidence 702. He also quotes the opinion as saying that hearing the flaws in expert testimony and allowing them to be challenged by opposing counsel is part of assessing its reliability, especially in a bench trial. Moving on, Your Honors, I think it's also important as far as the Daubert analysis is concerned to bear in mind that the Supreme Court has clarified that the Daubert analysis takes account of the standards that prevail in the relevant field of expert inquiry. Here we're talking about real estate appraisal, which is not an exact science. And real estate appraisers are often called upon to make appraisals in situations where there are not comparable sales to provide hard data that supports things like stigma damages. At this point, you're not defending the presentation of the damaged goods theory. Your argument is that that simply wasn't relied upon by the court? No, Your Honor. I'm sorry if that hasn't been clear. We think that the damaged goods theory is an essential part of Don Falshear's expert report and that it was well supported in the report itself. I think that his testimony at trial relies on it as well. I mean, like my colleague pointed out, that was certainly not the only factor that entered into the district court's valuation opinion, but it was certainly present and used at trial and we think it's reliable. So when we look at issues like whether it's commonly accepted in the industry, as you were referring to a moment ago, where is there any other case that in assessing the value of a partial condemnation looks to a damaged goods theory? I cannot cite a legal opinion for that, but I do think that Mr. Shearer's examples, the Fremont Island, Exxon Valdez, and Leading Underground Storage Tanks, illustrate how this concept can work in analogous real property settings. I mean, I think that it simply doesn't make sense to contend that these incidents of environmental contamination bear no relation to a pipeline easement because the point of these examples is that the occurrence of actual contamination in some instances gives rise to a perceived fear or a perception of contamination in places where there is none. I mean, that clearly applies to pipelines. I mean, you have pipelines, it's known that they explode sometimes, seldom, given how many there are. But the fact that they do creates a perception in the mind of the buyer that can cause them to discount the value of property. Even as to stigma damages, Mr. Shearer's own opinion was that while they may attach, they may also be temporary and over time may not have an effect on value. Where the district court doesn't acknowledge that or make any findings as to that, whether it's factoring into the decision, whether it's permanent, temporary, again, don't we have a problem both with Dalbert and then that feeding into clear error? I think the permanence issue is really a red herring. I mean, I think that the district court stated specifically in its opinion that it found the methodology of Shearer sound, that it was using the damage risk theory to factor into its valuation opinion. And whether the damage is permanent, Mr. Shearer did not say that the damage would be temporary in this instance. And just because he didn't specifically opine as to whether it would be temporary, I think you can reasonably infer that it's not. I see I'm running out of time here, Your Honor, so I do want to emphasize one last thing that's come up in this court's case law in eminent domain takings cases. There is a case called USB 68.94 acres of land where this court notes the special significance of expert valuation opinion in eminent domain cases that center on the value of the property and also notes that courts should be especially reluctant to exclude expert testimony that may help the fact finder in cases like this for the reason that the value of condemned property is largely a matter of expert opinion. It's largely, I don't have the language in front of me. Oh, yes, I mean, here's the language from the court. There are no infallible means for determining with absolute conviction what a willing buyer would have paid a willing seller for condemned property. It's always in the nature of an informed judgment call, and that's why you need expert testimony in cases like this. So this special principle enunciated by this case combined with Daubert's strong preference for admission of expert testimony should counsel this court to affirm Judge Brand's decision to admit the testimony. Judge, can you address if it turns out that we don't agree as to Daubert or O52 and we're considering the question of the disposition and whether there should be a new trial for damages? That was something that was explicitly requested in the Pontius brief. It was not on behalf of your client. Is that a new trial on damages something that you were also seeking? And if so, what is the reason you think that the plaintiffs here should have what has been described as the second bite of the apple? Well, I respectfully disagree with that characterization, Your Honor. I do think that we should be given a new trial on damages. I think that the UGI's position on whether we should have the opportunity to introduce new expert testimony at said trial basically amounts to them saying we shouldn't be able to muster expert evidence that meets the standard they espouse. This court would be making a ruling that would give guidance to the district court on what kind of expert testimony is admissible in these pipeline easement cases. It simply doesn't make sense, if the court doesn't agree with us, to not allow us to try and follow that ruling through finding a new expert. Thank you, Your Honor. Thank you. Mr. Martin? Thank you, Your Honors. Very quickly, there's no question that the judge relied on Mr. Shearer's testimony in fashioning the reduction in value of 15% and 30%. At JA 18-21 for one case and JA 34 for the other, he makes that clear. Second, we understand that appraisal has some play in the joints as applied to property, but there is no immunity for appraisers from the standards in Daubert as applied to the record. And here, in Mr. Shearer's report or in his testimony, there is no factual link to these particular easements as far as the reduction in value is concerned for stigma. That perception was his own personal opinion, but that's where it ended up. We know his opinion is speculative because he admitted to it. We know it isn't grounded in market data because he said so. We know the appraisal case studies are not comparable because he said that, too. And finally, as the court acknowledged, we know that this is an untested, unverified, first-time-in-litigation sort of damaged goods notion. This is exactly what Daubert takes aim at and is for. It's not about credibility. It's not about weighing. On the other hand, it can't rise to the dignity of admissible evidence where it has no basis in any grounding in the particular case. So we have a Daubert exclusion on the one hand or Rule 52 on the other. What significance should it have that this is a bench trial? So in a bench trial, as the cases we've cited have indicated, there is still a function for this court in reviewing to look at the fact-finding process of the district court. And when we examine that fact-finding process here, we find that this reduction in value piece for stigma is devoid of any factual support in the record or it's not rationally related to any data that's linked to the specific facts of this case. It's vulnerable for that reason. And that would be true in a bench trial. It would be true in a jury trial. As I said, a more conservative guess heaped on an initial guess, you still have a guess. And guesses are not probative of facts. Guesses do not support verdicts. Lastly, on Harley-Davidson, the important piece of Harley-Davidson is that the court says, speculative expert testimony on stigma will not be admitted. The reason the testimony was admitted in Harley-Davidson is very different than this case. There, there was actual environmental contamination, and the expert testified to standards that related to environmental contamination. The court also found that there was no impermissible factors considered and no speculation in the expert's testimony at all. Okay, the difference here is we don't have any of that. And the more pertinent case is the one I said, the Buffalo Township opinion and Smith, where the court took Harley-Davidson and said, when we apply that to an underground pipeline where stigma is simply a matter of speculation and the experts say so, that testimony should be excluded. It's incompetent. It's not admissible. That's the result that should have happened here. Thank you. We thank both counsel for excellent briefing and excellent argument today. And we will take the case under advisement.